### GONSOULIN'S HEIRS vs. BRASHEAR.

APPEAL from the court of the fifth district.

PORTER, J. delivered the opinion of the court. The plaintiffs claim a tract of land in possessio of the defendant, who pleads title to it in himself.

Both parties assert a right to the premises in virtue of orders of survey issued by the Spanish government, and since confirmed by the commissioners of the United States. The *locus in quo* is admitted to be the same.

That of the plaintiff is eldest. It is dated in the year 1783. The petitioners in their *requete* state, that the island which they soli

A party who obtained the governor's order to be put in possession of vacant land, in 1783, but does not appear to have taken it, cannot evict one who obtained a similar order in 1802, and is in possession under it.

West'n Dis'ct
*August*, 18 6.

GONSOULIN'S
HEIRS
*vs.*
BRASHEAR.

is situated about four leagues to the west of the mouth of the river Chaffalaya, and that they wish to obtain a title in order that they may form an establishment, to supply the capital in case of need with pork and bacon.

The commandant of Attakapas certifies, that the land solicited is of no value, except for the objects mentioned in the *requete*. The governor directs the surveyor general, to place the petitioners on the land solicited, conformably to their memorial.

From the issuing of this order of survey up to the time of applying for the commissioner's certificate, in the year 1816, it does not appear that the plaintiffs or those under whom they claim, ever exercis d any acts of ownership over the land in question. They never placed slaves or hogs on it, as they stated in the petition they would do : nor ever paid taxes on it as making a part of their property. An attempt was made on the trial to prove they had complied with the engagement contained in their *requete*, but the evidence wholly fails to establish it.

The title of the defendant is founded on an order f survey, dated in the year 1820. An actual survey of the premises was made. An

actual settlement took place, and with the ex-
ception of three or four years ab ence, duri g
which time taxes were regularly paid, the
land has been inhabited up to the commence-
ment of this suit.

West'n Dis'ct
*August,* '826.

GONS ULIN'S
HEIRS
*vs.*
BRASHEAR.

The government of the United States have
relinquished their title to both, and the parties
so far as their rights may depend on any sanc-
tion from that source, stand with equal preten-
tions before the court. They are therefore
both thrown back on their titles, under the
former government. If these titles were com-
plete grants, their date would decide the ques-
tion, for the title having once passed from the
sovereign to the subject, he could not grant it
to another. But the orders of survey on which
each of the parties claim, left the title or do-
mini n of the soil vested in the government.
They furnished an equitable right to those in
whose favor they issued, to demand a title of
the grantor, but nothing more ; a reference to
the various negotiations made by the Spanish
a thori i during the time Louisiana was pos-
sessed by that government, we think clearly
shews, that the dominion of the soil was not
to be considered as vested in the person ap-
plying for land, until the grant issued. The

government of the United States when they took possession of the country, by requiring all those who had inchoate titles to present them for approval, shewed that they considered they required confirmation, and a patent to vest the title.

As therefore the legal title was not vested in either plaintiff or defendant under the former government, their rights must be decided by ascertaining which of them had the strongest equitable one, or in other words, which of them according to the laws, usages, and customs prevailing while that government had possession of Louisiana, would have had the best right to the premises.

We think there cannot be a doubt the defendants would. The policy of the Spanish government, as is well known, was to invite emigration and promote the settlement of the country. All the general regulations in relation to land in the province, and almost every order of survey they issued, proves that the motives just mentioned were the ruling ones. Repeated proclamations of the governors declared all orders of survey null, the land conceded in which, was not settled within a limited time. The plaintiffs pretentions tried by

this test are entirely defective    In 1783 their ancestor applied for the land, and held out to the government as an inducement to grant it, that it was unfit for any other purpose but that of raising hogs, and that if given to him he would proceed to place slaves and swine there to succour the capital with meat of that kind. During the space of nineteen years that had elapsed from the granting this order of survey until the issuing the second, he failed to comply with the promise.    It was not surveyed, nor settled, nor even taxes paid on it.    Under such circumstances, as there was no legal obligation on the part of the government to issue a grant for the land, we are satisfied there was no moral one.    And we are of opinion that if the parties now before us were each claiming a title from the Spanish government had it remained here, and contesting the validity of each others pretentions, that the title of the defendant would prevail.

This opinion renders it unnecessary to examine the question of prescription.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Simon* & *Baker* for the plaintiffs, *Brownson* for the defendant.